**UNITED STATES DISTRICT COURT**
District of New Jersey

**CHAMBERS OF**
**JOSE L. LINARES**
JUDGE

**MARTIN LUTHER KING JR.**
**FEDERAL BUILDING & U.S. COURTHOUSE**
**50 WALNUT ST., ROOM 5054**
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER OPINION

October 30, 2007

Abraham S. Alter, Esq.
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065

Karla Joy Gwinn, Esq.
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

      Re:    **Santiago v. Commissioner of Social Security**
                **Civil Action No.: 06-5174 (JLL)**

Dear Counsel:

      Presently before the Court is Plaintiff's Complaint seeking review of the Administrative Law Judge's decision granting Supplemental Security Income ("SSI") to Plaintiff beginning on December 27, 2004, and denying her request for Disabled Widow's Benefits ("DWB"). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, this Court remands the ALJ's decision, specifically with respect to her step five analysis.

**PROCEDURAL HISTORY**

      On February 28, 2003, Plaintiff filed applications for (1) Supplemental Security Income, and (2) Disabled Widow's Benefits. The applications were denied initially and again on Reconsideration. A hearing was held before ALJ Marilyn Faulkner on December 5, 2005. ALJ Faulkner denied Plaintiff's applications on March 31, 2006. On August 25, 2006, the Appeals Council concluded that there were no grounds for appeal. Plaintiff now appeals ALJ Faulkner's ruling pursuant to 42 U.S.C. §405(g).

## FACTUAL BACKGROUND

Plaintiff, Natividad Santiago, was born on December 27, 1949. (R. 45). Plaintiff became a widow on December 5, 1992. (R. 46). Neither Plaintiff, nor her deceased husband had been previously married. (R. 46).

Plaintiff alleges disability as of June 1, 1990 due to orthopedic disorders, depression and circulatory problems. (R. 45-47). Plaintiff was 53 years-old when she first applied for benefits. Plaintiff has a high school equivalency degree and understands and speaks English. (R. 53, 60, and 137). Plaintiff has worked as a bus driver and a housekeeper. (R. 55).

Plaintiff generally complains of severe low back pain, knee pain, depression, and poor circulation. A March 12, 1991 CT examination identified "minimal disc protrusions" at levels L5 - S1 and "findings suggestive of mild osteoarthritis." (R. 115). In May 1994, Plaintiff was treated for low back pain and right knee pain. (R. 110). A January 1998 MRI showed multi-level bulging discs from L2 to S1. (R. 109). On March 31, 2001, Plaintiff received emergency room treatment for right leg pain attributed to her low back disorder. (R.118). In July 2001, Plaintiff was diagnosed with deep venous thrombosis and was prescribed Coumadin. (R. 123).

On November 6, 2003, at the request of the Social Security Administration, a consultative internist examined Plaintiff and "reported clinical evidence of chondromalacia of the left patella with deformities coincident with degeneration arthritis of the left knee and chronic back pain." (R. 16). The physician also noted that "flexion of the lumbar spine was diminished (45 degrees) most probably due to degenerative disc disease." (R. 16). Additionally, there was a genu valgus deformity of the left knee, crepitation of the left patella, and flexion of the left knee was limited to 120 degrees. (R. 16). On November 15, 2003, a consultative psychologist diagnosed Plaintiff with a recurrent, severe depressive disorder. (R. 138). Finally, on March 12, 2004, Dr. Graff conducted a Mental Residual Functional Capacity Assessment and determined that Plaintiff is capable of unskilled work. (R. at 157).

## LEGAL STANDARDS

### A.  Disability Determination

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an inability "to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do his previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a plaintiff is disabled. See 20 C.F.R. § 404.1520. At step one, the

Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If she is not employed, then the Commissioner proceeds to step two. See 20 C.F.R. § 404.1520(a). At step two, the Commissioner must determine whether the plaintiff's impairment or combination of impairments is severe. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). At step three, the Commissioner must decide whether the plaintiff suffers from a listed impairment. If the plaintiff does not suffer from a listed impairment or its equivalent, then the Commissioner moves to step four. 20 C.F.R. § 404.1520(d). At step four, the Commissioner determines whether based on plaintiff's Residual Functional Capacity ("RFC") she can still do her past relevant work. If the Commissioner determines that plaintiff can no longer perform her past work, then she proceeds to step five. Finally, at step five, the burden shifts to the Commissioner to show that other work exists in significant numbers in the national economy that the plaintiff could perform given her residual functional capacity, age, education and past work experience. If the Commissioner cannot show that work exists, then the plaintiff is entitled to disability benefits.

The five-step sequential evaluation involves shifting burdens of proof. See, e.g., Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing, at step one, that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c)). If the claimant establishes these initial burdens, she must next demonstrate, at step three, that his impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If he makes this showing then he is presumed disabled. If he cannot show this, then at step four he must show that her residual functioning capacity ("RFC") does not permit her to return to her previous line of work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then in the final step, step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). Note that the burden only shifts to the Commissioner at step five; throughout steps one through four the burden lies entirely with the claimant. However, if the Commissioner cannot meet this burden, the claimant shall receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 n. 4 (D.N.J. 1995).

**B.    Disabled Widow's Benefits**

In order to claim Disabled Widow's Benefits ("DWB"), a plaintiff must prove that he or she is at least fifty years-old, unmarried, the widow of a deceased insured wage earner, and that she became disabled no later than seven years after the insured died or seven years after she was last entitled to survivor's benefits, whichever is later. See 20 C.F.R. § 404.335.

**C.    Standard of Review**

This Court must affirm the ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is more than a "mere scintilla" and "means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, when " the [ALJ] is faced with conflicting evidence, [she] must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The District Court must review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984). However, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Rather, the court must give deference to the administrative decision. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Thus, even if the record supports more than one rational interpretation, the ALJ's determination must be upheld. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986). With this framework in mind, the Court turns now to Plaintiff's arguments.

## LEGAL DISCUSSION

### A.    Disability Determination

In steps one and two of her analysis, the ALJ found that Plaintiff was not engaged in a substantial gainful activity and that her impairments were severe. Plaintiff does not contest these findings.

Plaintiff does, however, take issue with the ALJ's findings beginning at step three. First, Plaintiff contends that the ALJ's step three analysis is a conclusory statement and, therefore, cannot be the subject of any meaningful judicial review by this Court. The Court, however, finds that substantial evidence supports the ALJ's conclusion at step three. In Burnett v. Comm'r of Social Security, 220 F.3d 112 (3d Cir. 2000), the Third Circuit held that an ALJ must "fully develop the record and explain [her] findings at step three, including an analysis of whether and why [each of claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." Burnett, 220 F.3d at 120. "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting [her] analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Rather, "the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Id. Therefore, the ALJ's decision must be read as a whole to determine whether or not Plaintiff meets the requirements for any listing.  See Jones, 364 F.3d at 503.

At step three, the ALJ specifically noted that when reviewing Plaintiff's impairments, she paid particular attention to "Listing Sections 1.00 et seq. (musculoskeletal) and 12.00 et seq. (mental disorders)." (R. at 15).  The ALJ also stated that, "as noted below, the claimant's severe musculoskeletal and mental impairments, considered singly or in combination, are not accompanied by the specific abnormal findings diagnostic test results, secondary complications or functional limitations required by the Listing of Impairments." (R. at 15). The ALJ then cited to Exhibits 1F through 11F, which represent the entire body of record medical evidence contained in the Record. Although the ALJ did not provide her analysis of Plaintiff's medical impairments at step three, she set forth her reasoning at step four, as discussed in further detail below. Thus, the ALJ's decision, read as a whole, contains "a sufficient development of the record and explanation of findings to

permit meaningful review." Jones, 364 F.3d at 505 (3d Cir. 2004).[1]

With respect to step four, Plaintiff argues that the ALJ failed to provide "an evidentiary basis" for her RFC determination. "The ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli v. Massanari, 247 F.3d 34, 41 (3d. Cir. 2001) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981)). The Court has considered Plaintiff's argument in this regard and finds that the ALJ properly explained the basis for her finding that Plaintiff is capable of light, unskilled work. For example, the ALJ explained, in relevant part, as follows: (1) Plaintiff can walk without a handheld assistive device (R. at 130); (2) the clinical findings of Dr. Vassallo on November 6, 2003 were consistent with a capacity to stand and walk for six hours in an eight hour work day (R. at 128 – 133); (3) Plaintiff has not received on-going treatment for back-pain; (4) Plaintiff has not been hospitalized or received any significant treatment for a mental disorder; and (5) Plaintiff is not on any psychotropic medication for a mental disorder. Thus, the Court finds that the ALJ adequately provided a clear explanation for her decision at step four, which is supported by substantial evidence.

With respect to step five, Plaintiff asserts that the ALJ erred by using "the Grids," instead of calling a vocational expert. The Third Circuit has indicated that an "ALJ's reliance on the Guidelines in the presence of [Plaintiff's] nonexertional limitations constitutes reversible error under Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000)." Poulos v. Comm'r of Social Security, 474 F.3d 88, 94 (3d Cir. 2007). In both Sykes and Poulos, the Social Security Administration made the exact same argument that Defendant makes in the instant case: "the Medical-Vocational guidelines can be relied on in the presence of a nonexertional limitations if those limitations do not significantly narrow the occupational base." (Defendant's Br. at 22). In rejecting this argument, the Third Circuit explained:

> [I]n the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion). Sykes, 228 F.3d at 261. The Commissioner's Acquiescence Ruling 01-1(3) [2001 WL 65745] instructs Third Circuit ALJ's to follow the Sykes rule. An ALJ may only substitute an Social Security Ruling ("SSR") for a Vocational Expert, if the ALJ relies on an "SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim . . . affect(s) the claimant's

---

[1] Plaintiff also argues that "an ALJ may not proceed to the fourth step of the sequential evaluation until she has explained . . . why the process did not terminate at step three." (Pl. Br. at 16 – 17). Although an ALJ cannot deviate from the sequence of the five steps when determining Plaintiff's disability status, Plaintiff cites to no legal authority indicating that the ALJ's explanation of her analysis must be set forth in the same sequential order. Because the ALJ's decision must be read "as a whole," the Court finds that the ALJ provided a sufficient explanation of her findings to permit meaningful review. See, e.g., Jones, 364 F.3d at 505.

occupational job base."

Allen v. Barnhart, 417 F.3d 396, 404 (3d Cir. 2005).

Here, Plaintiff has both exertional and non-exertional limitations. Therefore, the ALJ was obligated to either call a Vocational Expert or cite to an "SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim . . . affect(s) the claimant's occupational job base." Allen, 417 F.3d at 404. Since the ALJ neither called a Vocational Expert, nor cited to an appropriate SSR, this Court will remand the ALJ's decision with instructions that the ALJ review the Commissioner's Acquiescence Ruling 01-1(3), and the Third Circuit's holdings in Sykes, Barnhart, and Poulos, in connection with her step five analysis.

**B.     Disabled Widow's Benefits**

Finally, Plaintiff argues that SSR 83-20 requires an ALJ to call a medical expert to determine the onset date of the disability. In order to be entitled to DWB, Plaintiff must prove that she is at least fifty years-old, unmarried, the widow of a deceased insured wage earner, and that she became disabled no later than seven years after the insured died or seven years after she was last entitled to survivor's benefits, whichever is later. See C.F.R. § 404.335. Thus, the onset date of disability is critical for purposes of determining Plaintiff's entitlement to DWB.

When the alleged onset date is far in the past, slowly progressing, and adequate medical records for the most relevant period are not available, SSR 83-20 requires an ALJ to call a medical expert. See Walton v. Halter, 243 F.3d 703, 709; Newell v. Comm'r of Social Security, 347 F.3d 541, 549. Here, the ALJ noted that, "the evidence prior to 2003 is sparse with respect to any significant orthopedic or mental impairment." ( R. at 17). Therefore, although the Court declines to address the ALJ's finding as to whether or not the impairments at issue were slowly progressing, in an abundance of caution, the Court remands the ALJ's decision with instructions to provide a "legitimate medical basis" for what she determined to be the onset date of the disability and to reconsider the need to call a medical expert in light of SSR 83-20 if a legitimate medical basis cannot be provided without such expert's input.

**CONCLUSION**

For the reasons discussed above, the Court remands the ALJ's decision with instructions that the ALJ review the Commissioner's Acquiescence Ruling 01-1(3) and the Third Circuit's holdings in Sykes, Barnhart, and Poulos in the context of step five. Also, the Court remands the ALJ's decision with instructions to provide a "legitimate medical basis" for what she determined to be the onset date of the disability and to reconsider the need to call a medical expert in light of SSR 83-20 if a legitimate medical basis cannot be provided without such expert's input. To the extent that the ALJ determines that Plaintiff was disabled before December 31, 1999, the ALJ is likewise instructed to reconsider Plaintiff's DWB claim.

An appropriate Order accompanies this Opinion.

DATED:  October 30, 2007            /s/ Jose L. Linares
                                            JOSE L. LINARES,
                                            UNITED STATES DISTRICT JUDGE